UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                           :

TERRY ANDERSON, DAVID BERGAL,        :
DOUGLAS AND ELLEN BOWEN, MARK     :
GARRISON, and ANGELA CHEN SABELLA,  :
                                           :

            Plaintiffs,           :

                                           :         06 Civ. 3069 (GEL)
      -against-               :

                                           :       **OPINION AND ORDER**
DOCUPORT, INC.,                    :

                                         :
           Defendant.        :

                                         :
------------------------------------------------------------x

Kenneth Sussmane, McCue Sussmane & Zapfel, P.C.,
New York, New York, for Plaintiffs.

Christopher D. Loizides, Loizides & Associates,
Wilmington, Delaware, and Arthur Lehman, Arthur R.
Lehman, L.L.C., New York, New York, for Defendant.

GERARD E. LYNCH, District Judge:

      Plaintiffs initiated this action in the Supreme Court of the State of New York for New

York County by moving for summary judgment on a number of notes issued by defendant

Docuport, Inc. ("Docuport"). Defendant removed the case to this Court on the basis of diversity

of jurisdiction, and moves to dismiss on a variety of grounds. Plaintiffs' motion will be denied,

and defendant's motions will be granted in part and denied in part.

## BACKGROUND

      *According to plaintiffs' motion for summary judgment, filed in lieu of complaint in*

accordance with New York procedure, see N.Y. C.P.L.R. § 3213, plaintiffs each hold one or

more notes issued by Docuport.  Plaintiffs claim that all of the notes were properly issued by

defendant, that defendant defaulted, and that plaintiffs are therefore owed various amounts.

In opposing the motion, Docuport asserts that the notes are invalid, in that they were

issued by Docuport's former president and CEO, Norman Docteroff, to various friends and

family members as part of a scheme to loot the company, without notice or approval of

Docuport's directors.  Docuport further claims that it requires discovery to determine whether

any of the notes reflect legitimate obligations, in that the relevant financial records are in the

hands of its former attorney, Alan P. Fraade, an alleged ally of Docteroff, who refuses to return

them.  It questions whether plaintiffs have even established a prima facie case, asserts a variety

of defenses and motions, and maintains that at a minimum summary judgment is improper.

## DISCUSSION

**I.      Subject Matter Jurisdiction**

Although no party challenges the Court's jurisdiction — Docuport removed the case to

this Court and plaintiffs do not seek remand to state court — the Court is obligated to assure

itself of its own subject matter jurisdiction before proceeding.  The question arises because

Docuport moves to sever the claims of the various plaintiffs, each of whom claim under separate

notes issued at different times, and at least one of the plaintiffs seeks damages of less than

$75,000.[1]

Prior to the enactment of 28 U.S.C. § 1367 as part of the Judicial Improvements Act of

1990, Pub. L. No. 101-650, Title III, § 310, 104 Stat. 5113-14 (1990), the prevailing view in the

---

[1] Plaintiff Mark Garrison alleges that he holds a single $25,000 note on which Docuport
has defaulted.  (Sussmane Aff. ¶ 6.)

federal courts was that separate plaintiffs could not aggregate their claims to reach the jurisdictional amount required in diversity cases, and that in order for jurisdiction to exist, all plaintiffs had to assert claims in excess of the jurisdictional minimum. See Zahn v. Int'l Paper Co., 414 U.S. 291, 301-02 (1973). After a period of conflicting lower court decisions concerning the effect of § 1367 on the Zahn rule, the Supreme Court made clear that so long as there is complete diversity of citizenship between all plaintiffs and defendants, and at least one claim by a plaintiff that satisfies the amount in controversy requirement, the Court has original jurisdiction over the action within the meaning of § 1367, and may therefore exercise supplemental jurisdiction over the other, insufficient claims if those claims "derive from a common nucleus of operative fact" and are so closely related that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, ___, 125 S.Ct. 2611, 2632 (2005), quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

Here, complete diversity exists, and most of the plaintiffs assert claims in excess of $75,000. The claims all arise from notes allegedly issued by the same corporation between December 1999 and January 2001. Clearly a single plaintiff holding all of these notes would ordinarily be expected to join all of his claims and try them all in the same judicial proceeding. Although each claim arises from the issuance of a specific note, and thus represents a distinct transaction, a "common nucleus of operative facts" binds all of the claims, particularly when the matter is addressed in a practical fashion with respect to the claims and defenses actually raised here: the notes were apparently issued by the same corporate officer as part of what is clearly a common scheme or plan, whether that project is seen as a legitimate plan to raise working capital

3

for Docuport by borrowing, as plaintiffs contend, or a nefarious scheme to alienate corporate assets, as maintained by Docuport.  Accordingly, the test for supplemental jurisdiction is met, and the case was properly removed to federal court.

## II.    Severance

In a motion closely linked to the question of supplemental or pendent jurisdiction, Docuport argues that the plaintiffs' separate claims are improperly joined under Rule 20 of the Federal Rules of Civil Procedure because their claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and no "question of law or fact common to all [the plaintiffs] will arise in the action."  Fed. R. Civ. P. 20(a).  (See D. Mem. 17-18.)  That motion will be denied.

Docuport correctly notes that Rule 20 makes no provision for joinder where plaintiffs' claims are based on the same *type* of transactions.  (D. Rep. Mem. 18.)  But plaintiffs here allege more than a common type of transaction.  Although each note plainly represents a separate "transaction," it is equally clear that the issuance of a number of notes by the same small company, over a limited period of time, as part of a common scheme or plan, constitutes a "series of transactions" within the meaning of Rule 20.  The plaintiffs' claims thus satisfy the first test of Rule 20, as they arise from the same "series of transactions."

"The second requisite that must be satisfied to sustain permissive joinder is that a question of law or fact common to all the parties will arise in the action.  Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather the rule permits party joinder whenever there will be at least one common question of law or fact." 7 Wright, Miller and Kane, Federal Practice and Procedure (3d ed. 2001), § 1653 at 413.  Here,

4

common questions concerning the legitimacy of the notes abound.  Ultimately, however, both the same transaction and common question standards are "flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy."  Id. at 415.  Docuport argues that judicial economy will not be served here insofar as the plaintiffs' various claims are subject to different defenses and issues of proof.  (D. Rep. Mem. 19.)  But as a leading treatise points out, a broad approach to joinder "seems sound inasmuch as no difficulty is likely to result from the joinder of even marginally related parties at the pleading stage.  The court always has the discretion under Rule 20(b) to sever those parties whose claims may be tried more conveniently in separate actions."  Wright, Miller and Kane, supra, at 415-16 (footnote omitted).  It is difficult to tell at the pleading stage whether any claims at all will have to be tried — as is well known, only a vanishingly small percentage of cases filed are ever tried — or what manner of trial will ultimately prove efficient.  That different claims might ultimately turn out to be better tried separately is a weak argument for denying joinder in a complaint.

Under the Federal Rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."  Gibbs, 383 U.S. at 724.  The motion to sever plaintiffs' claims is therefore denied.

**III.**    **Personal Jurisdiction Over Docuport As to the Claims of Plaintiff Terry Anderson**

Docuport moves to dismiss the claims of plaintiff Terry Anderson for lack of personal jurisdiction.  The motion will be granted.

5

A federal court sitting in diversity may exercise jurisdiction over a foreign defendant if, first, the defendant is amenable to process under the law of the forum state, Omni Cap. Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987); Met. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996), and second, the exercise of personal jurisdiction comports with due process under International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny. See Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden to establish jurisdiction. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).

Docuport asserts, and plaintiffs do not contest, that it is a Delaware corporation whose sole office is in Montreal, Canada. (D. Mem. 17.) It offers evidence, again without contradiction, that it never operated in New York nor had offices in New York. (Tuli Aff. ¶ 7.) Indeed, it asserts, and plaintiffs do not deny, that Docuport currently has no operations of any sort in any location. (D. Mem. 17.) The Anderson notes provide no indication of where they were made, and do not contain a choice of forum clause. (Mot. for Summ. J. Ex. A.) They provide that they will be governed by the laws of New Jersey (id.), the state where Docuport once had its American offices. (Tuli Aff. ¶ 7.) Neither the plaintiffs' motion for summary judgment, which is the only formal pleading it has filed, nor any of its papers submitted in connection with the pending motions, alleges any facts (let alone provides evidence of any facts) that would support a finding that Docuport is present in New York and subject to general jurisdiction here, see N.Y. C.P.L.R. § 301, or that Anderson's claims arise from any transaction occurring in or in any way related to New York State so as to support long-arm jurisdiction, see

6

id. § 302.  The only basis for personal jurisdiction over Docuport is the provision in some of the notes consenting to personal jurisdiction, but Anderson's notes — unlike the notes issued to the other plaintiffs — lack such a provision.

Plaintiffs' arguments that Anderson's case may go forward in New York are misguided. First, Anderson points to the fact that the *other* plaintiffs' notes and extension agreements contain clauses in which defendant consents to personal jurisdiction in New York.  (P. Mem 19.) Docuport does not contest that it is subject to personal jurisdiction in New York by virtue of these clauses, with respect to those plaintiffs' claims.  But while it is well established that a choice-of-forum or consent-to-jurisdiction clause provides a proper basis for the exercise of personal jurisdiction, see, e.g., Chem. Waste Mgmt., Inc. v. Hernandez, No. 95 Civ. 9650, 1997 WL 47811, at *1 (S.D.N.Y. Feb. 5, 1997); John's Insulation, Inc. v. Siska Constr. Co., 671 F. Supp. 289, 295 (S.D.N.Y. 1987), such a clause operates as a consent to jurisdiction only with respect to claims on the agreement in which it is contained, see Dan-Dee Int'l, Ltd. v. KMart Corp., No. 99 Civ. 11689, 2000 WL 1346865, at *5 (S.D.N.Y. Sept. 19, 2000), or other agreements so closely related to the agreement containing the consent-to-jurisdiction clause as to be part of the same transaction.  Ainbinder v. Potter, 282 F. Supp. 2d 180, 185 (S.D.N.Y. 2003). That a party consents by contract to be sued in a particular state on claims arising from *that* contract does not confer jurisdiction on the courts of that state to hear suits brought by parties to other contracts that do not contain such a clause when the contracts do not "form[] part of a single transaction," id., and in this case there is no evidence suggesting the notes were part of a single transaction.

Second, plaintiffs claim that the Court has supplemental jurisdiction over the Anderson claims under 28 U.S.C. § 1367. (P. Mem. 19-20.) But as Docuport correctly notes, the concept of supplemental jurisdiction concerns the *subject matter* jurisdiction of the federal courts. See Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 331 (2d Cir. 2006). It does not concern a court's power to exercise jurisdiction over the person of a defendant. That power is found, as the Second Circuit held in Arrowsmith, in "the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." 320 F.2d at 223. The fact that Docuport has consented to suit in New York on other, related notes may be relevant to the constitutional fairness of permitting New York to exercise judicial power over it in connection with the Anderson notes, should New York attempt to do so. But plaintiff points to no authority suggesting that New York law contains any such provision for "supplemental personal jurisdiction," and the Court has found none.[2]

Finally, plaintiffs briefly note that the extension agreements signed by certain plaintiffs contain clauses consenting to jurisdiction in New York, and point to Docuport's contention that

---

[2] The Second Circuit recognizes a *federal* common-law doctrine of "pendent personal jurisdiction" for cases brought pursuant to a federal statute authorizing nationwide service of process in which the federal and state claims derive from a common nucleus of operative fact. See IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993). The rationale behind this doctrine is that "when a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States." Med. Mut. of Ohio v. deSoto, 245 F.3d 561, 567-568 (6th Cir. 2001). This rationale obviously does not apply to cases like the present one, in which personal jurisdiction is governed by state law.

8

"there were identical extension agreements with all of the [p]laintiffs." (Tuli Aff. ¶ 24.)[3]
Plaintiffs thus suggest that there is a question of fact as to whether an identical extension
agreement existed between Docuport and Anderson, with the implication that such an agreement
would constitute consent to personal jurisdiction in the courts of New York.

Even assuming, however, that Anderson signed extension agreements "identical" to those
disclosed in the affidavits of plaintiffs Bergal and Garrison — something that plaintiffs not only
do not admit, but implicitly deny (see P. Mem. 17 ("defendant has offered no proof that
[Anderson, Bowens and Sabella] entered into any such extension agreement")) — the clause in
question is not a generalized consent to suit in New York, but is part of an arbitration clause that
designates courts in New York as having "jurisdiction for any proceeding to confirm and enter
judgment upon" arbitration awards. (See, e.g., Bergal Extension Agmt., ¶ 6D, attached to
Summ. Jmt. Mot. Ex. B.) Plaintiffs deny the applicability of the arbitration clauses, but their
denials are meritless, as will be explained below. Thus, while Anderson's extension agreements,
if they existed, would constitute consent to personal jurisdiction in New York for the limited
purpose of addressing the validity of an arbitration award, such provisions would hardly allow
this Court to hear Anderson's claims on the merits, because the same provisions would compel
the parties to resolve their dispute by arbitration. The dispute resolution provisions of the other
plaintiffs' extension agreements leave no doubt that the parties' agreed forum for resolution of
disputes related to that agreement is an arbitral tribunal in New York, not the state or federal
courts in that State.

---

[3] It should be noted that all parties *cannot* have entered extension agreements that are
"identical" to those submitted by Bergal and Garrison, since those agreements are not even
identical to each other. (See Extension Agreements attached to Summ. Jmt. Mot. Exs. B and D.)

9

Accordingly, Anderson has pled or argued no factual basis for personal jurisdiction in New York over Docuport with respect to his claims, and his claims must therefore be dismissed. Since his claims must be dismissed on this ground, the Court need not reach Docuport's arguments that venue is improper as to those claims and that Anderson's allegations as to one of his notes fail to state a claim against Docuport on which relief may be granted.

IV.    **Arbitration**

Docuport next moves to dismiss plaintiffs' claims and compel arbitration. The factual basis for such motion is clearest with respect to plaintiffs David Bergal and Mark Garrison. Plaintiffs' motion for summary judgment includes affidavits in which each plaintiff sets forth the factual basis for his or her motion. Both Bergal and Garrison submit affidavits averring that Docuport executed and delivered promissory notes in specified amounts, and attach the relevant documents. (See Summ. Jmt. Mot. Exs. B, D.) Garrison goes on expressly to note that he subsequently entered an extension agreement (Summ. Jmt. Mot. Ex. D ¶ 3), and attaches a copy. Although Bergal's affidavit does not expressly refer to an extension agreement, he attaches a copy of such an agreement, and asserts that the "[p]rincipal and interest [on his two notes] were payable in full on February 28, 2002." (Id. Ex. B ¶ 3.) Since the only promissory note attached provides for a different due date (id., promissory note ¶ 2(B)), this assertion is only comprehensible in light of the extension agreement, also attached to his affidavit, which among other things amends the maturity date to February 28, 2002 (id., extension agreement ¶ 2.)

Both extension agreements, which are nearly identical, contain clauses providing that

> The parties agree that they shall be deemed to have agreed to binding arbitration in New York, New York, with respect to the entire subject matter of any and all disputes relating to or arising under this Agreement . . . .

(Id. Ex. B ¶ 6(D), Ex. D ¶ 5(D).) Federal law generally favors arbitration, see Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001), and New York law likewise requires broad enforcement of arbitration clauses. See Matter of Nationwide Gen. Ins. Co. v. Investors Ins. Co. of America, 37 N.Y.2d 91, 95 (1975). As the Court of Appeals has explained:

> Basically the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration. Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended. Penetrating definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration.

Id. at 96. See also Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 27 (2d Cir. 2002) (noting that state law governs the determination of whether parties agreed to arbitrate a given matter).

Plaintiffs, without citation to any authority or careful analysis of the extension agreements, argue that the arbitration clauses do not expressly reference arbitration of claims for the collection of the notes themselves, and should therefore be construed narrowly as applying only to disputes concerning the extension agreement as distinct from the underlying notes. (P. Mem. 17-18.) This argument is incorrect as a matter of law, fact, and logic.

As a matter of law, "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Moreover, the arbitration clause in these extension agreements is particularly broad, providing for arbitration of "the *entire subject*

11

*matter* of *any and all* disputes *relating to* or arising under this Agreement." (Summ. Jmt. Mot. Ex. B, extension agreement ¶ 6(D); Ex. D, extension agreement ¶ 5(D) (emphasis added). See Specht, 306 F.3d at 35-36 (stating that "all disputes" language creates a "broad" arbitration provision). A broad arbitration provision creates a presumption of arbitrability, and arbitration is favored "unless it can be said 'with positive assurance' that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute." Id. at 35, quoting Thomas James Assocs., Inc. v. Jameson, 102 F.3d 60, 65 (2d Cir. 1996). Disputes about the collection of a note whose terms are amended with respect to the crucial matter of the due date by an agreement containing an arbitration clause are clearly disputes "relating to" the subject matter of the agreement.

As a matter of fact, plaintiffs' contention that the extension agreements should be regarded as distinct from the notes because "[t]he extension agreements do not incorporate the [underlying notes] by reference and do not contain provisions providing that the terms of the extension agreements would control in the event of a conflict with the [notes]" (P. Mem. 17) is simply incorrect. In fact, each extension agreement contains a merger clause providing that it "constitutes the entire agreement between [the parties] with respect to the subject matter hereof." (Summ. Jmt. Mot. Ex B, extension agreement ¶ 6(E); id. Ex. D, extension agreement ¶ 5(E).) The clause goes on to provide that any prior understandings with respect to the subject matter "are merged in this Agreement." (Id.)[4] Plaintiffs' claims that the notes are overdue, and their

_____

[4] The clauses actually refer to the Agreement and "any instruments or other agreements executed simultaneously herewith." (Id.) Plaintiffs do not contend that any other instrument, including any underlying promissory note, containing provisions incompatible with or modifying the arbitration clauses was "executed simultaneously" with any extension agreement. The notes on which they rely were on their face executed prior to the extension agreements, and thus

demands for payment, are clearly disputes that concern the "subject matter" of the extensions, and the various terms in the notes and in the extension agreements that relate to the provision for dispute resolution are plainly matters relating to that "subject matter." They are therefore provisions on which the extension agreement provisions, by the express terms of the merger clause, control.

Finally, as a matter of logic, plaintiffs' efforts to rely upon the notes independent of the extension agreements make no sense. As both Bergal and Garrison implicitly or explicitly acknowledge, the whole point of the extension agreements was to modify the terms of the notes to which they apply; the maturity dates of the notes, which they set forth as essential elements of their claims, are derived from the extension agreements and not from the notes. Indeed, Bergal does not even provide one of the two notes on which he sues as part of his summary judgment motion, and argues that he does not need to, because the essential terms of the note are acknowledged and evidenced by the extension agreement that he does provide. (P. Mem. 10.) Moreover, the arbitration clauses contain provisions that only make sense on the assumption that the parties intended an arbitral forum for disputes regarding collection of the underlying notes. For example, the arbitration clauses contain express provisions dealing with the collection of money damages, provisions that would make no sense if the contemplated arbitration was to concern not disputes about the underlying indebtedness, but only explication of the meaning of the extension agreements themselves. (Summ. Jmt. Mot. Ex B, extension agreement ¶ 6(D); id. Ex. D, extension agreement ¶ 5(D).) The extension agreements thus on their face amend and

---

constitute the sort of "understandings and agreements heretofore had between the parties with respect to the subject matter hereof" that are expressly superseded by the extension agreements.

amplify the terms of the underlying notes, expressly setting forth a new agreement between the parties that governs the terms of Docuport's alleged indebtedness. One of those terms is the arbitration clause. Accordingly, it is clear that Bergal's and Garrison's claims must be submitted to arbitration.

The status of the claims of the remaining plaintiffs, Douglas and Ellen Bowen and Angela Sabella, are murkier. These plaintiffs do not provide any extension agreement as part of their pleadings, and Docuport does not supply any such agreement, either. Docuport thus has not established facts indisputably supporting its claim that they too have agreed to submit to arbitration.

Contrary to plaintiffs' assertions, however, that there is "no proof" that they entered any extension agreements, there is evidence in the record supporting Docuport's contention. Docuport provides sworn testimony that as part of a proposed investment in Docuport by a businessman named Alan Corbett, Docuport "insisted that anyone holding an unsecured claim must sign an extension agreement," and that the "extension agreements each contain a mandatory arbitration clause." (Tuli Aff. ¶ 24.) Docuport also provides a "Schedule of Lenders and Extensions," dated May 15, 2001, that lists the Bowens and Sabella as having entered written extension agreements. (Tuly Aff. Ex. 6.) Moreover, Docuport provides an explanation for its own failure to produce copies of any such agreement, claiming that after Docteroff resigned from Docuport, he delivered "substantially all of Docuport's records" to the law firm of Mintz & Fraade, P.C., which has allegedly refused to provide those documents to Docuport. (Tuli Aff. ¶¶ 27-29.) While this evidence is not sufficient conclusively to establish the existence of an arbitration agreement governing the relationships between the Bowens and Sabella and

14

Docuport, it is certainly sufficient to create an issue of fact, and to require the Court to permit discovery with respect to the existence of any such documents. Accordingly, with respect to plaintiffs Bowen and Sabella, Docuport's motion to dismiss and compel arbitration is denied, without prejudice to renewal upon completion of relevant discovery.

## V.    Statute of Limitations

In its original motion papers, Docuport argued that the claims of the Bowens and Sabella should be dismissed as barred by the statute of limitations. (D. Mem. 11-12.) In its reply brief, however, Docuport concedes that its contentions in this regard are based on disputed issues of fact, and therefore are more appropriately reserved to a later stage of this litigation. (D. Reply 7.) In any event, because the issue may properly lie in the province of arbitrators to resolve, the Court declines to address the matter further, pending final resolution of the question of arbitrability of these plaintiffs' claims.

## VI.    Summary Judgment

Both parties' motions for summary judgment must be denied. A party is entitled to summary judgment only when there is "no genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). It is well-established, moreover, that summary judgment motions prior to discovery are disfavored. The nonmoving party must have "had the opportunity to discover information that is essential to his opposition" to the motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5 (1986), and "should not be 'railroaded' into [an] offer of proof in opposition to summary judgment." Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). Thus,

15

"[o]nly in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." Hellstrom v. United States Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000).

It is apparent from the foregoing discussion that this dispute is replete with issues of fact. The parties dispute whether the notes were properly issued by an officer of Docuport with actual or apparent authority; whether certain of the notes were extended; whether various events that triggered the maturity of the notes occurred; whether the notes were converted to equity or paid, in whole or in part; and whether Docuport has counterclaims that would set off all or part of the indebtedness claimed by plaintiffs. Indeed, as noted above, discovery is required before the Court can even determine whether all of plaintiffs' claims are subject to arbitration. All of these matters require discovery and development of a record before the matter would be ripe for a proper summary judgment motion.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is denied. Defendant's motion to dismiss the claims of plaintiff Anderson for lack of personal jurisdiction is granted. Defendant's motion to dismiss the claims of plaintiffs Bergal and Garrison, and to compel arbitration of such claims, is granted. Defendant's motion to dismiss the claims of plaintiffs Bowen and Sabella is denied, without prejudice to renewal following discovery with respect to the existence of arbitration agreements pertaining to those claims. All other motions of defendant to dismiss or for summary judgment are denied.

Given that the claims of three of the plaintiffs must be dismissed either for lack of personal jurisdiction or because they are subject to arbitration agreements, and given the

16

possibility that discovery may reveal that the claims of the remaining plaintiffs also must be submitted to arbitration, the parties are directed to meet and confer regarding the proper future course of this litigation.  The parties may well agree that it is efficient to submit their entire dispute to arbitration, in which case the parties should notify that the Court that the case may be dismissed.  Absent such an agreement, the parties shall appear before the Court for a conference on Friday, March 2, 2007, at 12:00 p.m., at which time they should be prepared to discuss whether any plaintiffs intend to go forward with the instant litigation and any other case management issues that need to be resolved.  In particular, if such a conference is necessary, the parties shall be ready at the conference to propose a schedule for discovery on the existence of arbitration agreements between the parties, a schedule for the filing of proper pleadings, and a schedule for merits discovery.

SO ORDERED.

Dated: New York, New York
       February 13, 2007

GERARD E. LYNCH
United States District Judge

17